UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-1254

U. S. HOME CORPORATION; LENNAR CORPORATION,

Plaintiffs − Appellants,

v.

SETTLERS CROSSING, L.L.C.; WASHINGTON PARK ESTATES, LLC; BEVARD DEVELOPMENT COMPANY; STEVEN B. SANDLER; ISTAR FINANCIAL, INCORPORATED; DANIEL I. COLTON,

Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, Senior District Judge. (8:08−cv−01863−DKC)

Argued: March 23, 2017                    Decided: April 12, 2017

Before DUNCAN, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Jonathan D. Hacker, O'MELVENY & MYERS LLP, Washington, D.C., for Appellants. Peter D. Keisler, SIDLEY AUSTIN, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Daniel M. Petrocelli, David Marroso, James M. Pearl, Los Angeles, California, David K. Roberts, O'MELVENY & MYERS LLP, Washington, D.C., for Appellants. Eric Kuwana, John Rosans, William McGonigle, KATTEN MUCHIN ROSENMAN LLP, Washington, D.C.; Quin M. Sorenson, Erika L. Maley, SIDLEY AUSTIN LLP, Washington, D.C., for Appellee iStar Financial Incorporated. Thomas R.

Folk, REED SMITH, LLP, Falls Church, Virginia, for Appellees Settlers Crossing, L.L.C., Washington Park Estates, L.L.C., Bevard Development Company, Steven B. Sandler, and Daniel I. Colton.

—————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The Plaintiffs-Appellants in this case, Lennar Corporation and its subsidiary U.S. Home Corporation (collectively, "Lennar"), appeal the district court's holding that Defendant-Appellee iStar Financial, Inc. ("iStar") is entitled to specific performance under a land sales contract. For the reasons ably stated by the district court, we affirm.

I.

A.

This diversity appeal involves a long-running contract dispute over the sale of 1,250 acres of land in Prince George's County, Maryland ("the Property"). Because the district court recounted the facts comprehensively, we incorporate its opinions by reference and recite only those facts necessary to our analysis.

In 2005, Lennar--a homebuilder--began negotiating with Settlers Crossing, L.L.C. ("Seller")[1]--a land developer--to purchase the Property in order to develop it for residential use. That November, Lennar and Seller entered into a sales agreement under which Lennar would purchase the Property for $200 million, to be paid in full on September 30, 2006, with a $20 million deposit paid immediately. Seller turned over the environmental studies that had been conducted on the Property, and Lennar had access to the Property to inspect it from September 2005 to December 2007. Lennar learned

---

[1] Defendant-Appellee Steven B. Sandler controlled Settlers Crossing, L.L.C., Washington Park Estates, L.L.C., and Bevard Development Company, and we refer to them collectively as "Seller."

through the studies that portions of the Property had been used as the site of a wastewater treatment plant, as well as for sand and gravel mining, and therefore some of the land could "contain heavy metals, sludge, and varying debris." J.A. 2454. Lennar in fact commissioned a number of additional studies and engaged in remediation work, such as removal of storage tanks. There is no evidence indicating that Lennar was unable to conduct any analysis or test it wished to undertake during this time.

In 2006, given a decline in the housing market, Lennar asked to renegotiate the contract to reduce the purchase price, from $200 million to $134 million. Seller agreed, on the condition that, in exchange, Lennar would guarantee specific performance under the contract--an important incentive because Seller was then seeking to refinance the Property. After extensive negotiations, the parties executed an amendment to the contract on May 16, 2007. Seller obtained a loan from iStar with the Property as security. Lennar affirmed that it had no knowledge that any of Seller's representations were not true. The parties rescheduled closing for December 5, 2007.

In late 2007, Lennar began seeking a partner to share the costs and risks of the project, and represented to at least one entity that independent environmental assessments had not identified any hazardous conditions requiring extraordinary measures or higher-level studies. J.A. 4778. According to the district court, after "initial efforts to find a partner were unsuccessful, Lennar began to investigate strategies to delay the scheduled settlement date, if not to avoid closing altogether." J.A. 4779. Lennar's internal memoranda and correspondence show it placed the Property on a so-called "Hit List," reflecting Lennar's conclusion that it needed to change its strategy in light of continuing

4

declines in the housing market. Characterizing the Agreement as "not making any financial sense," J.A. 1138, Lennar's executives ordered all spending on the project stopped and instructed personnel to focus on creating "a way to off-load" it, J.A. 1137, through "alternative strategies," J.A. 1138. This included reviewing the contract to find an "escape clause." J.A. 4257.

Seller noticed that Lennar's work on the Property "had ground to a halt," and heard from one of Lennar's departing project managers that Lennar "was seeking to get out of the contract." J.A. 4781. When Seller inquired, Lennar provided no response.

By letter dated November 21, 2007, Lennar notified Seller that Seller had failed to satisfy conditions precedent to closing. Throughout the dispute and ensuing litigation, Lennar "resisted providing a definitive list of allegedly unsatisfied conditions." J.A. 4782 n.7. Lennar missed the closing on December 5, 2007. As a result, Seller defaulted on the loan, and iStar foreclosed on the Property.

On December 6, 2007, Seller then sued for declaratory relief in federal district court in the Eastern District of Virginia, seeking to identify which conditions precedent, if any, were unsatisfied so that the parties could still proceed to closing. This court affirmed a dismissal for lack of subject matter jurisdiction. *Settlers Crossing, L.L.C. v. U.S. Home Corp.*, 383 F. App'x. 286 (4th Cir. 2010) (unpublished).

On January 3, 2008, Lennar asked to enter the Property, identifying "a laundry list of issues that [it] purportedly sought to investigate--the vast majority of which had previously been addressed by the parties." J.A. 4784. Lennar's President testified that,

5

when it made the request, Lennar "didn't know what [it would] find" and had "no reason to believe that there was anything wrong with the property." J.A. 4785.

Distrusting Lennar's intentions, Seller denied access. On May 16, 2008, Lennar responded by serving Seller with a notice of default, citing Seller's denial of access, which triggered Seller's and iStar's cure periods under the contract and separate consent agreement. On May 30, 2008, Seller served its own notice of default, arguing that Lennar wrongfully failed to settle. To Lennar's consternation, the district court in the declaratory action granted Lennar the access it claimed it wanted, but within the cure period, thereby resolving any default by Seller. Instead of exercising that right, Lennar terminated the contract.

B.

Lennar filed the instant action on July 17, 2008, seeking the return of its deposit and claiming that Seller breached the contract by refusing Lennar's request for access and--later through an amended complaint--by failing to disclose that sewage sludge had been deposited on the Property. Seller and iStar counterclaimed for declaratory relief and specific performance of Lennar's obligation to close, as well as pre- and post-judgment interest at rates set by the contract.

As relevant to this appeal, the litigation also involved two evidentiary disputes regarding privilege. First, Lennar claimed that Steven Engel was its attorney, and that documents and communications with Engel were entitled to the attorney-client privilege. However, Engel was not licensed to practice law. The district court therefore sanctioned Lennar, and ordered it to turn over Engel documents and communications wrongfully

6

withheld under the attorney-client privilege but allowed it to continue to withhold documents under the work-product doctrine if it submitted such documents for *in camera* review. Second, the district court held that Lennar had waived the attorney-client privilege for documents produced to Seller by Lennar's former law firm, Greenberg Traurig, because Lennar and its counsel failed to take reasonable steps to prevent or promptly rectify the disclosure.

Following discovery, the parties filed cross-motions for summary judgment, which the district court denied. A two-week bench trial addressed two main issues: (1) whether Seller breached the contract when it denied Lennar access, and (2) whether Seller's environmental representations were adequate under the contract. The bulk of the trial focused on the second issue: Lennar asserted that the Property contained elevated concentrations of elements that it claimed were "Hazardous Materials" under the contract and that these elements could only be present as a result of the application of processed sewage sludge, which Seller did not disclose in the environmental reports. The parties each offered experts on this issue.

After trial, the district court issued a comprehensive 75-page opinion, holding that Lennar failed to meet its burdens at trial and that iStar--standing in the shoes of Seller-- was entitled to specific performance. The district court found that Seller's denial of access did not constitute a breach of the contract for three reasons: (1) Lennar acted in bad faith because it requested access solely to delay or avoid closing and, when given the access it claimed to want, never even exercised that right; (2) Lennar failed to satisfy the precondition of having insurance; and (3) any breach from the initial denial was cured

7

when the district court granted Lennar access to the Property in the declaratory-judgment action.

As for the adequacy of Seller's environmental representations, the district court held that Lennar had not demonstrated that "the source of 'Hazardous Materials' on the Property was something other than what was disclosed in the environmental reports provided by Seller." J.A. 4824. The district court expressly found that neither of the two experts on which Lennar relied were persuasive, and that one of them was not credible. J.A. 4812. By contrast, iStar's experts "were highly credible and informative, overwhelmingly so" compared to Lennar's experts. J.A. 4815 n.19. In any event, Lennar also failed to demonstrate that any "Hazardous Materials" were present in material amounts, as required by the contract.

Following further hearings, the district court issued additional opinions and orders to resolve disputes Lennar raised about appropriate remedies concerning (1) specific performance and (2) interest. In April and July 2013, Prince George's County passed certain zoning changes that affected a portion of the Property. The district court held that specific performance was still appropriate because the contract imposed the risk of zoning changes on Lennar from the date it was contractually obligated to settle: the contract's specific plat density and governmental takings provisions superseded the contract's boilerplate risk-of-loss provision. Moreover, the district court concluded that Lennar will receive the substantial benefit of its bargain when it purchases the Property, because the zoning changes "do not prohibit [Lennar] from pursuing its main purpose." J.A. 4893 n.20. With respect to interest, the district court held that iStar was entitled to

8

the contractual interest rate because Lennar defaulted by wrongfully failing to settle under the terms of the contract.

II.

Lennar appeals the district court's legal and factual findings regarding contractual breach, privilege assertions, award of specific performance, and interest. We review the district court's factual findings for clear error and legal conclusions de novo. *Roanoke Cement Co., L.L.C. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005). We see neither type of error here.

The district court issued comprehensive and well-reasoned opinions addressing the various aspects of this dispute. Seller did not breach the contract when it denied Lennar access because, among other factors, the evidence reflects Lennar made its request in bad faith. Further, Seller's environmental representations were adequate under the contract. In particular, Lennar's "late-developing theory," J.A. 4823, that heavy metals on the Property were due to sewage sludge that Seller failed to disclose lacks merit, especially given the district court's express credibility determinations. The district court's resolutions of the evidentiary disputes were well reasoned and far from an abuse of discretion. Lennar bargained for a reduced purchase price in exchange for the obligation to close. Specific performance and interest at the contractual rate are therefore appropriate.

9

## III.

Litigation in this matter has extended for nearly a decade. The district court handled the dispute with considerable care, and we discern no error in its meticulous opinions.

*AFFIRMED*