**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1485**

U. S. HOME CORPORATION; LENNAR CORPORATION,

        Plaintiffs – Appellants,

    v.

SETTLERS CROSSING, L.L.C.; WASHINGTON PARK ESTATES, LLC; BEVARD DEVELOPMENT COMPANY; STEVEN B. SANDLER; ISTAR FINANCIAL, INCORPORATED; DANIEL I. COLTON,

        Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paula Xinis, District Judge. (8:08-cv-01863-PX)

Argued: September 8, 2020               Decided: October 22, 2020

Before KING and FLOYD, Circuit Judges, and Thomas S. KLEEH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Marroso, O'MELVENY & MYERS LLP, Los Angeles, California, for Appellants. Colin E. Wrabley, REED SMITH LLP, Pittsburgh, Pennsylvania; Geoffrey Chepiga, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLC, New York, New York, for Appellees. **ON BRIEF:** Daniel M. Petrocelli, Jeffrey Gurrola, O'MELVENY & MEYERS LLP, Los Angeles, California, for Appellants. Timothy F. Maloney, Veronica Nannis, JOSEPH GREENWALD & LAAKE P.A., Greenbelt, Maryland; Brent R. Gary,

REED SMITH LLP, McLean, Virginia, for Appellees Steven B. Sandler, Settlers Crossing, L.L.C, Washington Park Estates, LLC, and Bevard Development Company. Eric A. Kuwana, COOLEY LLP, Washington, D.C., for Appellee iStar, Inc.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In April 2017, we affirmed the judgment in this District of Maryland civil action concerning a failed real estate transaction in Prince George's County. By that judgment, the district court ruled against plaintiffs Lennar Corporation and U.S. Home Corporation (collectively, "Lennar") and in favor of defendants, including iStar Financial, Incorporated, and Steven B. Sandler. In March 2019, following our affirmance of its judgment, the court awarded iStar and Sandler their costs, fees, and expenses as prevailing parties under contractual fee-shifting provisions. Lennar now appeals the court's awards of expert witness fees to iStar and attorneys' fees to Sandler. As explained herein, we affirm those awards.

## I.

## A.

The background of this dispute is relevant and therefore summarized. In November 2005, Lennar entered into a pair of agreements (the "Contract") with three entities — defendants Settlers Crossing, L.L.C., Washington Park Estates, LLC, and Bevard Development Company (collectively, the "Seller Companies"). The Contract included a Purchase and Services Agreement (the "Purchase Agreement") and a Contract for Services. Pursuant to the Contract, Lennar agreed to purchase 1,250 acres of prime land in Prince George's County (the "Property") from the Seller Companies for $200 million. Lennar then delivered the Seller Companies the sum of $20 million in deposits to secure the Contract. A month later, Sandler — sole owner of the three Seller Companies — signed

3

two Guaranty Agreements, personally guaranteeing the return of Lennar's $20 million in deposits in the event the Seller Companies breached the Contract.

Beginning around late 2006, Lennar sought to renegotiate the Contract because of a decline in the residential housing market. Lennar and the Seller Companies agreed to amend the Purchase Agreement on May 16, 2007, and thereby reduced the purchase price of the Property from $200 million to $134 million. Lennar and the Seller Companies further agreed to a guarantee of specific performance by Lennar.

During that period of time, the Seller Companies obtained financing assistance from iStar in exchange for a mortgage on the Property. More specifically, iStar made a $100 million loan to the Seller Companies, secured in part by the Property and in part by the Seller Companies' assignment of their rights under the Purchase Agreement (the "Collateral Assignment"). Under the Collateral Assignment, the Seller Companies retained the "exclusive right and license to exercise all rights in, to and under" the Contract absent an "Event of Default." *See* J.A. 1303.[1] "[U]pon the occurrence and during the continuance of such Event of Default," the Seller Companies would "neither have nor exercise any further rights" under the Contract. *Id.*

Because the housing market continued to decline, Lennar began seeking a partner to join in its real estate venture. Lennar was unsuccessful in that search and, in late 2007, began to develop strategies to delay the December 5, 2017 settlement date or to avoid

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

4

closing altogether. On November 21, 2007, Lennar notified the Seller Companies that they had failed to satisfy conditions precedent for closing the transaction. However, Lennar would not identify any unsatisfied conditions precedent that were a barrier to closing. Thereafter, on December 5, 2007, Lennar failed to appear for settlement.

In January 2008, Lennar sought permission from the Seller Companies to enter the Property to conduct investigations, studies, and tests, which Lennar asserted the Contract gave it the right to do. The Seller Companies, however, were suspicious of Lennar's intentions and denied access. Between January and March of 2008, the Seller Companies continued to work to resolve questions regarding whether the conditions precedent to the Contract were satisfied so that settlement could occur. In April 2008, Lennar called for the settlement to occur on May 27, 2008. On May 16, 2008, however, Lennar served a notice of default on the Seller Companies, relying on their denial of access to the Property. That notice of default triggered the Seller Companies' and iStar's cure periods under the Purchase Agreement and a separate Consent and Estoppel Agreement. Under the latter agreement, iStar had until July 2, 2008, to cure any alleged breach relating to the default notice.

Lennar did not attend the proposed May 27, 2008 settlement proceedings. As a result, the Seller Companies served their own notice of default on May 30, 2008. Lennar was subsequently granted access to the Property but made no attempt to enter it. On July 3, 2008, Lennar notified the Seller Companies that it had elected to terminate the Contract. Lennar then demanded a refund of its $20 million in deposits, but Sandler and the Seller Companies refused. Further, because the May 27, 2008 settlement date had passed, the

Seller Companies defaulted on the iStar loan on July 18, 2008. The default required iStar to exercise its rights under the Collateral Assignment. As a result, iStar stepped into the shoes of the Seller Companies under the agreements and foreclosed on the Property.

B.

On July 17, 2008, after notifying the Seller Companies of its election to terminate the Contract, Lennar initiated this civil action in the District of Maryland against iStar, Sandler, and the Seller Companies. By its operative First Amended Complaint of May 18, 2009, Lennar asserted seven claims, including breach of contract against Settlers Crossing and Washington Park Estates (Count I), breach of contract against Bevard Development (Count II), breach of guaranty against Sandler (Count III), fraudulent inducement against Settlers Crossing and Washington Park Estates (Count IV), fraud by concealment against Settlers Crossing and Washington Park Estates (Count V), and breach of environmental representations and warranties against Settlers Crossing and Washington Park Estates (Count VI). The seventh and final claim was for a declaratory judgment against iStar, Sandler, and the Seller Companies (Count VII). On June 30, 2009, iStar and the Seller Companies filed a joint counterclaim against Lennar for declaratory relief and specific performance of the Contract.

Following pretrial proceedings, two primary issues remained for trial: (1) whether the Seller Companies' denial of Lennar's access to the Property constituted a breach of contract (Counts I and II); and (2) whether Settlers Crossing and Washington Park Estates had breached the environmental representations and warranties provision in the Purchase Agreement (Count VI). If the Seller Companies were in breach of contract under either

6

theory, Lennar would be entitled to the return of its $20 million in deposits, which Sandler — as guarantor of the Seller Companies — would be responsible for (Count III). A bench trial was conducted in Greenbelt from March 31 to April 15, 2014. The bulk of the trial focused on the environmental representations claim. Lennar presented three expert witnesses in support of that claim, and iStar called four experts to counter Lennar's evidence.

Following the bench trial, the district court filed a comprehensive opinion, concluding that Lennar had failed to satisfy its burdens at trial and that iStar — standing in the shoes of the Seller Companies — was entitled to specific performance. *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. July 18, 2014), ECF No. 707. With regard to the environmental representations, the court ruled that Lennar had not proved that the source of hazardous materials on the Property was something other than what was disclosed in the environmental reports provided by the Seller Companies. The court found that two of Lennar's experts on that issue were not persuasive and that one of them was not credible, whereas iStar's experts were highly credible and informative. The court concluded that the Seller Companies' denial of access was not a breach of contract because Lennar's request for access was made in bad faith to delay purchasing the Property. Thus, the court further ruled that Sandler had not breached the Guaranty Agreements.[2]

---

[2] The district court also dismissed the joint counterclaim as moot, concluding that the November 2009 foreclosure meant that the Seller Companies no longer had an interest in the Property.

After additional proceedings, the district court entered judgment in favor of iStar and against Lennar. *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. Jan. 22, 2015), ECF No. 731. The court directed Lennar to proceed to settlement within thirty days. Lennar did not, however, proceed to settlement but instead appealed the judgment to this Court. In April 2017, we affirmed the judgment, concluding in relevant part that the Seller Companies' environmental representations were adequate under the Contract. *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, 685 F. App'x 173 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 503 (2017).

## C.

### 1.

Following our affirmance of the judgment against Lennar, iStar sought reimbursement in the district court of its costs, fees, and expenses, pursuant to the fee-shifting provision of the Purchase Agreement.[3] More specifically, iStar requested $14,880,227.82 in attorneys' fees incurred from July 21, 2008, through the pendency of the proceedings, plus $656,002.12 in expert witness fees and $553,712.56 in costs and

---

[3] As set forth in the Purchase Agreement, the fee-shifting provision relating to iStar's claim for costs, fees, and expenses provides:

> In the event of any litigation arising under or pursuant to this agreement . . . the parties hereby agree that . . . the prevailing party in such matter shall be entitled to recover from the non-prevailing party[] such party's costs, fees and expenses incurred in such litigation, including actual and reasonable attorneys' fees and court costs.

*See* J.A. 591.

expenses. In response, Lennar challenged, inter alia, the reasonableness of the number of hours iStar's attorneys had billed and iStar's entitlement to expert witness fees.

In October 2018, the magistrate judge issued a Report and Recommendation that addressed iStar's fee application. *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. Oct. 16, 2018), ECF No. 860 (the "iStar R&R"). The iStar R&R recommended awarding iStar $10,848,353.84 in attorneys' fees and $553,712.56 in costs and expenses. It recommended denying iStar's request for expert witness fees because the Purchase Agreement's fee-shifting provision did not explicitly mention such fees. Lennar did not object to the iStar R&R, but iStar did object — specifically, to the recommended denial of its expert witness fees.

By Memorandum Opinion and Order of March 22, 2019, the district court adopted the iStar R&R in part, but also awarded iStar its expert witness fees, ruling that the plain language of the fee-shifting provision authorized such an award. *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. Mar. 22, 2019), ECF No. 876 (the "Fees Decision"). The Fees Decision alternatively concluded that iStar's expert witness fees were recoverable as "expenses incurred in litigation" because they were crucial to iStar's success in the litigation. *Id.* at 16.

9

As a prevailing party in the underlying litigation, Sandler also petitioned the district court for his attorneys' fees and costs under the Guaranty Agreements.[4]  Sandler sought the attorneys' fees he had incurred successfully defending the claims against him and the Seller Companies, supported by hundreds of pages of detailed billing records, declarations from counsel, and other evidence.  Lennar opposed Sandler's request for fees.  Lennar claimed that Sandler was not entitled to fees for defending the Seller Companies that did not directly relate to defending Sandler against the breach of guaranty claim.

After briefing, the magistrate judge filed a separate Report and Recommendation that recommended awarding Sandler his attorneys' fees.  *See U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. Oct. 1, 2018), ECF No. 855 (the "Sandler R&R").  The Sandler R&R largely rejected Lennar's objections — specifically, Lennar's objection to Sandler recovering fees incurred in defending the Seller Companies.  On that issue, the magistrate judge — applying the factors set forth in Rule 1.5(a) of the Maryland Attorneys' Rules of Professional Conduct and the "common core of facts doctrine" as set out by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) — concluded that

---

[4] The fee-shifting provisions in the two Guaranty Agreements, which underlie Sandler's request for attorneys' fees and costs, are identical and provide as follows:

> In the event of any litigation between [Sandler] and [Lennar] under this Guaranty, the party prevailing in such preceding such [*sic*] be entitled to an award against the nonprevailing party for reasonable attorney fees and costs of suit.

*See* J.A. 1433, 1435.

such fees were not "unreasonable" under the Guaranty Agreements' fee-shifting provisions.[5]

Lennar objected to the Sandler R&R. Later, following a status conference at which the district court raised the issue of the Seller Companies' right to attorneys' fees under the Purchase Agreement, the court directed Lennar, Sandler, and the Seller Companies to analyze and brief that issue. By its Fees Decision of March 22, 2019, the court adopted the Sandler R&R and rejected Lennar's objection to the award of fees to Sandler that were incurred defending the Seller Companies. The court determined that the plain language of the fee-shifting provisions in the Guaranty Agreements authorized the recovery of fees defending claims against the Seller Companies. Thus, the court believed that it was not necessary to decide the issue based on the common core of facts doctrine. In the court's view, it was undisputed that Sandler was the prevailing party as to the claim in which Lennar attempted to invoke its entitlement to recover the $20 million in deposits from Sandler, so all that remained for the court to resolve was the reasonable amount of fees to which Sandler was entitled for defending against Lennar's lawsuit.

In analyzing the meaning of "reasonable attorney fees" under the Guaranty Agreements, the district court took into consideration that for Sandler to prevail on the

---

[5] Rule 1.5 of the Maryland Attorneys' Rules of Professional Conduct specifies eight factors that are used to determine the reasonableness of attorneys' fees. *See* Md. R. Attorneys, R. 19-301.5(a). Further, under the common core of facts doctrine, where a party is partially successful — prevailing on some claims but not others — a court may in its discretion deem all fees "reasonable" and recoverable if all claims "are based on a common core of facts or related legal theories." *See Ochse v. Henry*, 88 A.3d 773, 785 (Md. Ct. Spec. App. 2014) (citing *Hensley*, 461 U.S. at 434-37).

11

claim against him, he had to show that the Seller Companies were not liable for breaching the Contract. *See* Fees Decision 7. In other words, as a guarantor, Sandler's defense required that he prove that the Seller Companies did not breach the Contract. Looking to Rule 1.5(a) of the Maryland Attorneys' Rules of Professional Conduct, as required by Maryland law, the court concluded that the time and labor required to perform such legal services properly had to include mounting Seller Companies' defense against the breach of contract claims — had those attorneys done otherwise, they could have committed malpractice. Alternatively, the Fees Decision determined that, even if Sandler could not recover fees incurred on behalf of the Seller Companies, the Seller Companies could recover their attorneys' fees directly. Thus, the court awarded Sandler $2,369,375.87 in attorneys' fees.

Lennar timely noted this appeal from the Fees Decision, contesting the district court's awards of attorneys' fees to Sandler and expert witness fees to iStar. We possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's interpretation of a contract de novo. *See Sky Angel U.S., L.L.C. v. Discovery Commc'ns, L.L.C.*, 885 F.3d 271, 278 (4th Cir. 2018). We also assess de novo a district court's conclusions of law. *See Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 379 (4th Cir. 2001) (en banc).

12

## III.

## A.

We will first address and resolve whether iStar can recover its expert witness fees under the Purchase Agreement. Maryland adheres to "the common law 'American Rule,' which states that, generally, a prevailing party is not entitled to recover its attorney fees." *See Nat'l Cas. Co. v. Lockheed Martin Corp.*, 799 F. Supp. 2d 537, 542 (D. Md. 2011) (citations and internal quotations omitted). Nonetheless, although the default rule is that parties to lawsuits bear their own costs and fees, contractual fee-shifting provisions "are valid and enforceable in Maryland, subject to a trial court's examination of the prevailing party's fee request for reasonableness." *See Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 283 (Md. 2008) (citation omitted).

Further, Maryland adheres to and applies "the law of objective interpretation of contracts." *See Weichert Co. of Md. v. Faust*, 19 A.3d 393, 404 (Md. 2011). That rule means that Maryland courts "give effect to the plain meaning of an unambiguous term[] and will evaluate a specific provision in light of the language of the entire contract." *Id.* A court "must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Id.* (citation and internal quotation marks omitted). "[A]bsent fraud, duress, mistake, or some countervailing public policy, courts should enforce the terms of unambiguous written contracts without regard to the consequences of that enforcement." *Id.* (internal quotation marks omitted).

13

1.

Lennar's appellate argument relies primarily on two district court cases, maintaining that, under Maryland law, iStar is not entitled to its expert witness fees under the fee-shifting provision of the Purchase Agreement. In *Berkley Trace, L.L.C. v. Food Lion, L.L.C.*, the fee-shifting provision permitted the plaintiff Landlord to recover "from Tenant all costs incurred by the Landlord, including reasonable attorneys' fees and such costs and reasonable attorneys' fees which the Landlord incurred on any appeal." *See* No. 1:11-cv-03207, at 6 (D. Md. Oct. 18, 2013), ECF No. 115. The court concluded that, although the agreement provided for the recovery of "all costs," it did "not provide for the recovery of expert witness fees"; thus, in the absence of an explicit contractual specification of expert fees, there was "no legal basis upon which to award those fees." *Id.* at 6, 22. Similarly, in *Natures Way Marine, L.L.C. v. Everclear of Ohio, Ltd.*, the agreement provided for the recovery of "all of the costs and expenses [a party] incurs in enforcing this [agreement] and protecting its interests, including its reasonable attorneys' fees and expenses." *See* No. 1:12-cv-316, at 2 (S.D. Ala. Apr. 17, 2015), ECF No. 225. The Alabama court also ruled that "nothing in the contract" suggested the parties "contemplated awarding expert witness fees to the prevailing party when they negotiated the contract." *Id.* at 18-19.

Neither *Berkley Trace* nor *Natures Way Marine* is helpful here. In *Berkley Trace*, the phrase "including reasonable attorney's fees" modified "all costs incurred by the Landlord." Similarly, in *Natures Way Marine*, the phrase "including its reasonable attorneys' fees" modified "all of the costs and expenses." Importantly, neither fee-shifting provision included the word "fees" separate from "attorney's fees." Thus, in both

14

situations, the modifier "including reasonable attorney's fees" was necessary for attorneys' fees to be recoverable because, as courts have recognized, attorneys' fees are not part of the costs or expenses of a suit. *See, e.g.*, *Cook v. Nationwide Ins. Co.*, 962 F. Supp. 2d 807, 822-23 (D. Md. 2013); *see also Singer v. Fid. & Deposit Co. of Md.*, 54 A. 63, 63 (Md. 1903).

Here, however, the relevant fee-shifting provision is broader than either of those in *Natures Way Marine* or *Berkley Trace*. The Purchase Agreement's fee-shifting provision allows for the recovery of "costs, *fees* and expenses incurred in such litigation, *including* actual and reasonable *attorneys' fees* and court costs." *See* J.A. 591 (emphasis added). Unlike the decisions Lennar relies on, the language here *does* include the term "fees" separate from "attorneys' fees." In specifically providing that "fees" includes attorneys' fees, the Purchase Agreement plainly indicates that attorneys' fees are only a subset of the fees that may be recovered. Lennar's contrary contention would read out the plain meaning of the phrase "costs, fees, and expenses incurred in litigation." Courts are obliged to "give meaning to each word used and avoid constructions that render language meaningless, superfluous, or contradictory." *See Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 701 (4th Cir. 2012). Thus, for our Court to give meaning to the word "fees," we must interpret "fees" to include more than just attorneys' fees.

Our conclusion is bolstered by the fact that Maryland law does not "strictly require the phrase 'attorney's fees' in a contract to override the American rule," *see Nova Rsch., Inc.*, 952 A.2d at 285, which is not true as to the law of other jurisdictions. Put another way, in Maryland, the use of the word "fees" in a fee-shifting provision would be enough

15

to allow the recovery of attorneys' fees. Thus, "fees" must mean more here than just attorneys' fees. And because Maryland does not strictly require the phrase "attorneys' fees" for attorneys' fees to be recoverable, we are satisfied that the Maryland courts would not require the phrase "expert witness fees" for expert witness fees to be recoverable. Therefore, the district court's award of expert witness fees to iStar was proper and must be sustained.[6]

## B.

Next, we will decide whether Sandler was eligible for attorneys' fees under the Guaranty Agreements and Maryland law. Lennar does not dispute that the relevant fee-shifting provisions allow for Sandler to recover his own attorneys' fees. Rather, Lennar contends that Sandler is improperly recovering fees related to the Seller Companies' — and not his own — defense. For his part, Sandler acknowledges that he is recovering fees related to the Seller Companies' defense, but argues that such fees are proper in these circumstances because Sandler and the Seller Companies had the same attorneys and they all had to prove the same thing — that Lennar had breached the Contract — for Sandler to be a prevailing party.

---

[6] The district court also awarded iStar its expert witness fees on the alternative ground that "[b]ecause the expert testimony, and the experts' preparation for such testimony[,] was 'essential' to the [c]ourt's ultimate determination, [recovery of expert witness fees] is reasonable and allowable under the fee-shifting provision." *See* Fees Decision 17. Nonetheless, because Maryland adheres to the American rule regarding fee shifting, it is unlikely that the Maryland courts would infer a right to recover expert fees regardless of the language in the fee-shifting provision.

16

1.

The fee-shifting provisions of the Guaranty Agreements grant the prevailing party in a proceeding "between the Guarantor and the Purchaser under this Guaranty" the right of recovery of reasonable attorneys' fees and costs of suit. *See* J.A. 1433, 1435. It is undisputed that Sandler and Lennar are the "Guarantor" and "Purchaser" respectively. Further, it is undisputed that Sandler was the "prevailing party," because the district court concluded that Sandler did not need to return the $20 million in deposits — and that Sandler only became a prevailing party by proving that the Seller Companies were not liable for breaching the Contract. If the Seller Companies had been in breach of contract, Sandler would have been liable, as guarantor, for Lennar's $20 million in deposits. For that reason, the Fees Decision concluded that it was appropriate for Sandler to recover fees technically incurred on the Seller Companies' behalf. We agree with the district court. To rule otherwise would be irrational — the only reason Sandler is recovering fees for services incurred on behalf of the Seller Companies is because he owned them and thus had control of their legal strategy. Thus, the district court did not err when it authorized Sandler to recover fees related to work incurred on behalf of the Seller Companies.

2.

Although the district court's reasoning is sound, it can only go so far. As argued on appeal, it is unclear whether Sandler's recovery of attorneys' fees includes fees incurred on the Seller Companies' counterclaims against Lennar. According to Lennar, if we accept the district court's logic, Sandler cannot recover fees related to the Seller Companies'

17

counterclaims because the outcome of such counterclaims would not affect Sandler. And Lennar may be correct.

In particular, Lennar claims that it is "puzzled by Sandler's assertion that he does not seek fees in connection with the Seller Companies' counterclaims" because, according to Lennar, "[t]he bills themselves (which were submitted under seal) include dozens of entries relating to 'counterclaims.'" *See* Reply Br. of Lennar at 6 n.3 (citing *U.S. Home Corp. v. Settlers Crossing, L.L.C.*, No. 8:08-cv-01863 (D. Md. June 29, 2018), ECF No. 804-3). According to Sandler, however, he excluded any requests for "fees and costs not connected to the claims against him, or to claims for which he could not be found liable, including fees relating to the defendants' joint counterclaim." *See* Br. of Sandler at 22 (citing J.A. 402).

Nonetheless, to the extent that Sandler is in fact recovering fees for the Seller Companies' counterclaims, Sandler was entitled to recover such fees under the magistrate judge's logic. The Sandler R&R recognized that Sandler was entitled to attorneys' fees for work done on behalf of the Seller Companies under the common core of facts doctrine specified in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). That doctrine is particularly applicable where, as here, the claims at issue "ar[i]se out of the same transaction and require[] proof or denial of essentially the same facts." *See Reisterstown Plaza Assocs. v. Gen. Nutrition Ctr., Inc.*, 597 A.2d 1049, 1056 (Md. Ct. Spec. App. 1991). Applying the common core of facts doctrine, the Sandler R&R reasoned that Sandler's success in defending against Lennar's claim was necessarily dependent on the "same common core

of facts" as the claims against the Seller Companies. The Sandler R&R, therefore, did not seek to parse fees between Sandler and the Seller Companies.

The district court did not specifically adopt the Sandler R&R's use of the common core of facts doctrine, apparently because the court believed there was a simpler resolution to the issue. In any event, because Sandler may be recovering fees related to the Seller Companies' counterclaims, application of the common core of facts doctrine has merit — the theory permits Sandler to recover fees related to the Seller Companies' counterclaims. Thus, to the extent that Sandler is recovering fees for the Seller Companies' counterclaims, the common core of facts doctrine authorizes his recovery of such fees.

IV.

Pursuant to the foregoing, we affirm the district court's awards of iStar's expert witness fees and Sandler's attorneys' fees.

*AFFIRMED*